UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEBRA WHITTEMORE,

          Plaintiff,

vs.                                              Case No. 3:09-cv-1242-J-MCR

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is remanded for further proceedings.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 8, 2007, alleging a period of disability beginning June 1, 2006. (Tr. 14). After a hearing on December 9, 2008, an administrative law judge (the "ALJ") issued a decision on March 4, 2009, denying Plaintiff's application. (Tr. 9, 21). The Appeals Counsel denied Plaintiff's request for review on October 23, 2009 (Tr. 1, 7), rendering the ALJ's decision final. 20 C.F.R. §§ 404.981, 422.210(a). Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 11).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since June 1, 2006, due primarily to Lyme Disease. (Tr. 141, 165, 176).

### B.     Summary of Evidence Before the ALJ

Plaintiff was last insured for DIB on September 30, 2007, at which time she was forty-four years of age. (Tr. 12, 14, 23, 125, 132). She has at least a high school education and past work experience as a landscape worker, maintenance repairer, bench assembler, and real estate agent. (Tr. 19, 29-40, 59-60, 141, 42, 181, 191). Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.

On June 23, 2006, Plaintiff reported being bitten by a tick and suffered hyperpigmentation, irritation, itching, raised circular eruptions, redness, tenderness, and worsening rash. (Tr. 208-11). Examination of the area revealed moderate tenderness of the anterior aspect of the left lower leg with a three centimeter raised lesion with raised borders. At that time, Plaintiff was diagnosed with Lyme Disease[2] and hypertension. (Id.).

In August 2006, Plaintiff began developing pain and other symptoms in her neck, arms, and shoulder blades. (Tr. 206-07). In September 2006, Plaintiff began reporting

---

[2]Lyme Disease is a recurrent multi systemic disorder caused by the spirochete. It begins in most cases with migraines, which is followed by highly variable manifestations that may include myalgia, arthritis of large joints, stiff neck, nervous system problems, cardiovascular problems, and other systemic symptoms such as chills, fever, headache, malaise and vomiting. Dorland's Illustrated Medical Dictionary (31st ed. 2007).

-2-

back pain and stiffness. (Tr. 204-05). At that time, she was prescribed Flexeril and Fioricet and she was again diagnosed with Lyme Disease and osteoarthritis. (Tr. 201-03). Plaintiff was referred to Dr. Michael Cichon, M.D., infectious disease specialist. (Tr. 240, 252). Dr. Cichon's records reveal continued treatment through September 2007. (Tr. 304, 306, 308).

On September 18, 2006, a lyme blot was performed on Plaintiff and was positive for IGENEX IGM, suggesting exposure to B burgdorferi. (Tr. 240). In January, February, and March 2007, Plaintiff received intravenous treatment for her continuing disease. (Tr. 235-38). On April 2, 2007, Plaintiff underwent a right upper quadrant ultrasound which evidenced gallbladder polyps. (Tr. 239). On April 23, 2007, Plaintiff complained of headaches, neck, and shoulder pain. (Tr. 233-34). From May 2007 through June 2007, Plaintiff reported body aches, blurred vision, and a foggy head to Dr. Ali Akbar, M.D., and was diagnosed with hypertension, anxiety, and Lyme Disease. (Tr. 256-59).

On February 27, 2008, Dr. Cichon completed a medical source statement. (Tr. 290-98). Dr. Cichon opined Plaintiff could only lift and carry up to twenty pounds occasionally and sit for two hours, stand for one hour and walk for thirty minutes at one time without interruption in an eight hour day. She would need to lie on a sofa or bed for two and a half hours out of an eight hour day and could only occasionally reach, finger push or pull with her left and right hand or occasionally operate foot controls. She could never balance or crouch and she was unable to read very small print. She could never tolerate unprotected heights, humidity, wetness, dust, odors, fumes, extreme

cold, heat, or moderate office noise.  She could only occasionally, shop, travel without a companion, climb a few stairs at a reasonable pace, prepare a simple meal, handle and use paper files.  He further opined that Plaintiff suffered from chronic fatigue, neck ache, headache, and blurred vision.  She would need be absent from work more than four times a month due to her impairment.  (Id.).

Plaintiff returned to Dr. Akbar for additional treatment from May 2008 through December 2008.  (Tr. 311, 318, 337).  During that time, her blood pressure was elevated and she continued to feel anxious.  Her headaches also continued.  Plaintiff was again diagnosed with Lyme Disease, anxiety and hypertension.  (Id.).  On December 29, 2008, Yvonne Billups, ARNP, and Dr. Akbar wrote a letter regarding Plaintiff's condition. (Tr. 337).  The letter expressed that Plaintiff had exhibited consistent symptoms and limitations from May 2007 through September 2007, and up to present day.

On December 16, 2008 and December 18, 2008, Dr. Cichon also wrote letters regarding Plaintiff's condition.  (Tr. 335, 338).  Dr. Cichon expressed that Plaintiff suffered from Lyme Disease and explained that she had exhibited consistent symptoms and limitations starting September 2006, when she was first treated by Dr. Cichon, through the time of the medical source statement dated February 27, 2008.  Dr. Cichon further opined that Plaintiff's severe limitations included headaches, neck and shoulder pain, brain fog, depression and extreme fatigue.  (Id.).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2006, the alleged onset date.  (Tr. 14).  At step two, the ALJ found Plaintiff suffered from the severe impairment of Lyme Disease.  (Tr.

14-16). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4. (Tr. 16). At step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC")[3] to perform a full range of light work.[4] (Tr. 16-19). In reaching Plaintiff's RFC, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting factors of her alleged symptoms not completely credible. (Tr. 17).

At the hearing on December 9, 2008, the ALJ utilized the testimony of a vocational expert (the "VE"). The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations. Based on the hypothetical questions posed, the VE testified Plaintiff was capable of performing her past relevant work as a real estate agent. (Tr. 19-20). Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act. (Tr. 20).

---

[3] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

### III.     ANALYSIS

#### A.     The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. <u>Issues on Appeal</u>

Plaintiff presents two issues on appeal: (1) whether substantial evidence supports the ALJ's finding that Plaintiff could perform her past work as a real estate agent (Doc. 12, pp. 7-12); and (2) whether substantial evidence supports the ALJ's decision to reject the opinions of treating physicians, Drs. Cichon and Akbar (Doc. 12, pp. 12-20).  The Court will consider each of these issues.

#### 1. Whether substantial evidence supports the ALJ's finding that Plaintiff could perform her past work as a real estate agent.

Plaintiff argues the ALJ erred in classifying her past work as a real estate agent as "past relevant work" at step four of the sequential analysis.  (Doc. 12, pp. 7-12).  In response, the Commissioner asserts that substantial evidence supports the ALJ's finding that Plaintiff was capable of performing her past relevant work as a real estate agent and therefore is not under a "disability," as defined by the Social Security Act.  (Doc. 13, pp. 3-10).

As stated above, the Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520.  At step four of the sequential evaluation process, the ALJ must determine if Plaintiff is capable of performing her past relevant work as she performed it or as it is generally performed in the national economy.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, to assist in this determination, the ALJ obtained the testimony of a VE.  (Tr. 58).  At the hearing before the ALJ on December 9, 2008, the VE described Plaintiff's past work as a real estate agent.  (Tr. 37-38, 59-60).  The VE testified and provided a "Past Relevant Work Summary" indicating the job of a real estate agent had a skill level of five and was

light work according to the Dictionary of Occupational Titles ("DOT").[5]  (Tr. 59, 191). The ALJ asked the VE to assume an individual with Plaintiff's RFC.  (Tr. 16, 63).  The VE then testified that an individual with Plaintiff's RFC was capable of performing the job of real estate agent as it is generally performed in the national economy.  (Tr. 64-65).

Again, Plaintiff contends her past work as a real estate agent does not qualify as past *relevant* work.  (Doc. 12, pp. 7-12).  Work experience is relevant when it is performed within fifteen years prior to the claimant's date last insured, lasted long enough for the claimant to learn to do the job, and was substantial gainful activity.  20 C.F.R. § 404.1565(a).  According to 20 C.F.R. § 404.1572:

> Substantial gainful activity is work activity that is both substantial and gainful:
>
> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

Here, Plaintiff performed her job as a real estate agent within fifteen years prior to her date last insured and it lasted for approximately five years, certainly long enough for her to learn the job.  (Tr. 37-38, 59-60).  Plaintiff worked for profit and engaged in significant mental and physical activities.  (Tr. 37-40).  Therefore, the ALJ reasonably

---

[5]Plaintiff offered no objection to the VE's "Past Relevant Work Summary."  (Tr. 59, 191).

concluded Plaintiff's past work as a real estate agent qualifies as past relevant work. See Barnes v. Sullivan, 932 F.2d 1356, 1358-59 (11th Cir. 1991).

In addition, Plaintiff contends the ALJ erred in failing to specifically explain why Plaintiff's work as a real estate agent qualifies as substantial gainful activity. (Doc. 12, pp. 8-12). However, Plaintiff did not raise this issue to the ALJ and offered no objection to the VE's "Past Relevant Work Summary," which included the job of real estate agent. (Tr. 59, 191). Therefore, the ALJ was not required to specifically discuss his reasons for concluding Plaintiff's past work as a real estate agent qualifies as substantial gainful activity. See Robinson v. Astrue, 365 Fed. Appx. 993, 2010 WL 582617, at *2 (11th Cir. 2010) (rejecting the plaintiff's argument that an ALJ should have discussed a particular impairment when the plaintiff failed to raise the impairment as a basis for disability to the ALJ); O'Neal v. Astrue, 2008 U.S.Dist. LEXIS 20080, 2008 WL 705248 (M.D. Fla. Mar. 14, 2008) (concluding the ALJ was not required to further develop the record regarding the plaintiff's work history); Barnes, 932 F.2d at 1358-59 (recognizing that the ALJ had not specifically analyzed the plaintiff's work but noting the plaintiff failed to raise the issue to the ALJ).

Plaintiff further contends the ALJ failed to adequately develop the record regarding whether her past work as a real estate agent qualifies as substantial gainful activity. (Doc. 12, pp. 8-9). To the contrary, the record demonstrates that the ALJ obtained information from the VE regarding the physical and mental demands of Plaintiff's work as a real estate agent. (Tr. 16, 19, 59-65). Plaintiff failed to show why and to what extent additional information was required.

Therefore, the Court finds the ALJ did not err in finding Plaintiff's work as a real estate agent qualifies as past relevant work and properly relied on the VE's testimony that Plaintiff was capable of performing such work. See 20 C.F.R. § 404.1560(b)(2).

**2.    Whether substantial evidence supports the ALJ's decision to reject the opinions of treating physicians, Drs. Chichon and Akbar.**

Plaintiff argues the ALJ erred in failing to articulate good cause for discrediting the opinions of treating physicians, Drs. Chichon and Akbar, and further erred in crediting the opinions of non-examining state agency physicians. When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. Lewis, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. MacGregor, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at 1440); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

Where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor, 786 F.2d at 1053.

Plaintiff was referred to Dr. Cichon in 2006, due to symptoms caused by her continuing Lyme Disease. (Tr. 240, 252). Dr. Cichon's records reveal treatment through September 2007. (Tr. 304, 306, 308). On February 27, 2008, Dr. Cichon completed a medical source statement and opined Plaintiff could only lift and carry up to twenty pounds occasionally and sit for two hours, stand for one hour and walk for thirty minutes at one time without interruption in an eight hour day. (Tr. 290-98). She could only sit for two hours and stand for three hours and thirty minutes total in an eight hour day. She would need to lie on a sofa or bed for two and a half hours out of an eight hour day and could only occasionally reach, finger push or pull with her left and right hand or occasionally operate foot controls. (Id.). She could never balance or crouch and she was unable to read very small print. She could never tolerate unprotected heights, humidity, wetness, dust, odors, fumes, extreme cold, heat, or moderate office noise. (Id.). She could sometimes, shop, travel without a companion, climb a few stairs at a reasonable pace, prepare a simple meal and sort, handle and use paper files. (Id.). She suffered from chronic fatigue, neck ache, headache and blurred vision. She would be absent from work more than four times a month due to her impairment and her conditions had lasted or would last for twelve consecutive months. (Id.).

On December 16, 2008 and December 18, 2008, Dr. Cichon wrote letters regarding Plaintiff. (Tr. 335, 338). In said letters, Dr. Cichon expressed that Plaintiff

suffered from Lyme Disease and explained that she had exhibited consistent symptoms and limitations since September 2006, when she was first treated, through the date of the medical source statement dated February 27, 2008.  (Id.).

The ALJ discredited Dr. Cichon's opinion as not supported by the objective medical findings and inconsistent with his own treatment records.  (Tr. 19).  The ALJ noted that Dr. Cichon's records indicated improvement and that Plaintiff testified to abilities in excess of what Dr. Cichon opined.  The Court disagrees.  Although Dr. Cichon's records indicate some improvement from time to time, they also reflect fluctuating condition, as opposed to sustained improvement.  These records illustrate that Plaintiff was having frequent injections of antibiotics throughout the time period under review.  Additionally, medical records from August 20, 2007 indicate reduced energy, weakness, tender lymph nodes, and headaches.  (Tr. 308, 310).  On September 10, 2007, it was noted that Plaintiff had a reaction to the Rocephin IV antibiotic and was diagnosed with a respiratory infection.  (Tr. 306).  With regard to the alleged inconsistencies with Plaintiff's testimony, the ALJ failed to cite any specific inconsistencies.  Upon review of the records and testimony, the Court finds that the inconsistencies, if any, are minimal and the records reflect fluctuating condition.

Dr. Cichon's opinions are also consistent with Dr. Akbar's opinion that Plaintiff suffered from severe neck pain and shoulder pain, headaches, brain fog, extreme fatigue, and depression.  (Tr. 337).  The ALJ discredited the opinions of Dr. Akbar because her records do not document significant clinical or laboratory abnormalities.  (Doc. 19).  Again, the Court finds this reasoning insufficient.  As for the lack of clinical

findings, it is undisputed that Plaintiff suffers from Lyme Disease, which carries multiple symptoms and which laboratory work is often inconsistent. The ALJ has not pointed to any laboratory work that was negative and should have been positive. Therefore, the Court finds the ALJ provided an inadequate basis for discrediting Dr. Akbar's opinion.

The record contains two opinions from non-examining state agency consultants.[6] Instead of crediting the two treating sources, the ALJ credited the opinions of the two non-examining physicians. (Tr. 220-27, 265-72). "Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians' [opinions] are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). However, an ALJ can accord more or less weight to a particular source if there is good cause to do so. See Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Here, other than the opinions of the non-examining physicians, the ALJ does not establish any cause for discrediting the opinions of Drs. Cichon and Akbar and crediting the opinions of the two non-examining physicians.

---

[6]The Court notes that these opinions were issued using an incorrect date last insured. Both physicians issued their opinions as of September 30, 2006; however, Plaintiff's date last insured is September 30, 2007. (Tr. 220-21, 265-66, 270).

Based on the foregoing, the Court finds the ALJ failed to properly evaluate the medical opinions of Drs. Cichon and Akbar and offered inadequate reasons for discrediting those opinions.[7]

## V. CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) reconsider the medical opinions of Dr. Cichon and accord them proper weight; (2) reconsider the medical opinions of Dr. Akbar and accord them proper weight; and (3) conduct any other proceedings deemed appropriate. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **However, this order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

---

[7]This Court is not holding that the opinions of Drs. Cichon and Akbar are entitled to great weight; rather, the ALJ failed to articulate adequate reasons for discrediting their opinions.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  23rd  day of February, 2011.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record